UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDWARD KRAMER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | CIVIL NO. |
| | : | |
| | : | |
| THE STATE OF CONNECTICUT, | : | |
| THE STATE OF CONNECTICUT | : | |
| DEPARTMENT OF CORRECTION, | : | |
| DEPARTMENT OF CORRECTION | : | |
| COMMISSIONER LEO ARNONE, | : | |
| WARDEN PETER MURPHY, | : | |
| CORRECTIONS OFFICER CAPUTO, | : | |
| and | : | |
| CORRECTIONS OFFICER SERRANO, | : | |
| | : | |
| Defendants. | : | FEBRUARY 22, 2015 |

## C O M P L A I N T

### COUNT ONE

1. This is an action for money damages to redress the deprivation by the defendants of rights secured to the plaintiff by the Constitution and laws of the United States and the State of Connecticut. The defendants subjected the plaintiff to violation of his constitutional rights pursuant to the First, Eighth and Fourteenth Amendments to the United States Constitution. The conduct of the defendants further constitutes violation of the Americans with Disabilities Act of 1990, As Amended, 42 U.S.C. §§

1

12111, et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 et seq. and the Religious Freedom Restoration Act, 42 U.S.C.A. §2000bb-1.

    The conduct of the defendants further constitutes violation of the laws of the State of Connecticut, as invoked pursuant to the supplemental jurisdiction of the court.

    2.  For an extended period of time continuing to his release from the custody of the defendants, the plaintiff was subjected to an ongoing pattern of deliberate indifference to his personal and physical safety and to his medical needs, to harassment, discrimination and disparate treatment based upon his disabilities or perceived disabilities, and his Orthodox Jewish religion.

    3.  Said conduct was persistent and ongoing throughout the plaintiff's custody, thus constituting a continuous course of conduct.

    4.  Jurisdiction of this Court is invoked under the provisions of Title 28 United States Code §§1331, 1343(3) and 1367(a); Title 38 United States Code §4323; and Title 42 United States Code §§1983 and 1988.

    5.  During all times mentioned in this Complaint, the plaintiff, Edward Kramer, was and is an adult citizen of the United States.

    6.  During all times mentioned in this action, the defendants State of Connecticut and State of Connecticut, Department of Correction (hereinafter, "DOC"), were and are employers with more than 100 employees.

7. During all times mentioned in this Complaint, the defendant Department of Correction Commissioner Leo Arnone was the Commissioner of the defendant State of Connecticut Department Correction.  Defendant Arnone was an employee of the Connecticut Department of Correction acting in his official capacity. He is sued, however, only in his individual capacity.

8. During all times mentioned in this Complaint, the defendant Warden Peter Murphy was the Warden of MacDougall-Walker Correctional Institution, a correctional facility of the defendant State of Connecticut Department Correction, located in Suffield, Connecticut.  Defendant Murphy was an employee of the Connecticut Department of Correction acting in his official capacity. He is sued, however, only in his individual capacity.

9. During all times mentioned in this Complaint, the defendant Corrections Officer Caputo was a Corrections Officer at MacDougall-Walker Correctional Institution, a correctional facility of the defendant State of Connecticut Department Correction. Defendant Caputo was an employee of the Connecticut Department of Correction acting in his official capacity. He is sued, however, only in his individual capacity.

10. During all times mentioned in this Complaint, the defendant Corrections Officer Serrano was a Corrections Officer at MacDougall-Walker Correctional Institution, a correctional facility of the defendant State of Connecticut Department Correction.  Defendant Serrano was an employee of the Connecticut Department of

Correction acting in his official capacity. He is sued, however, only in his individual capacity.

11. During all times mentioned in this complaint, the defendants were acting under color of law, that is, under color of the Constitution, statutes, laws, rules, regulations, customs and usages of the United States, the State of Connecticut.

12. At all times relevant to the instant Complaint, the plaintiff was a pretrial detainee in the custody of the State of Connecticut Department of Corrections. The plaintiff was housed at MacDougall-Walker Correctional Institution (hereinafter, "MCI").

13. The plaintiff was and is a qualified individual with a one or more disabilities. The plaintiff is completely disabled as the result of a traumatic brain injury; suffers from diabetes mellitus; psoriatic arthritis; rheumatoid arthritis; asthma; sleep apnea; cardiac conditions; and has undergone multiple surgical spinal fusions.

14. As an individual suffering from such disabilities and serious medical conditions, the plaintiff requires reasonable accommodations, inter alia, hospitalization, medical devices, the assistance of a cane or wheelchair to facilitate mobility, and requires oxygen supplementation.

15. Upon his entry into the defendant Department of Corrections, the plaintiff provided the defendants notice of his disabilities, serious medical conditions and need for accommodations therefor.

16. The plaintiff is an observant member of the Orthodox Jewish faith, and as such, observes such religious practices attendant thereto. Such practices include, but are not limited to participation in religious services, the observance of religious holidays, special dietary restrictions and wearing religious garments or apparel.

17. Upon his entry into the defendant Department of Corrections, the plaintiff requested that he be permitted to practice and observe his religious beliefs.

18. The defendants had actual notice of the plaintiff's seriously compromised physical condition.

19. On or about February 23, 2012, the plaintiff was confined to a hospital bed in Ward 4 of MCI. The plaintiff required an oxygenator to breathe, and was restricted to his hospital bed by his physical condition.

20. Ward 4 is a locked medical unit in the Hospital Unit of MCI. Ward 4 is restricted in its use to pretrial detainees, and is limited in capacity to three patients.

21. Wards 1 through 3 are for the hospitalization of convicted inmates. Convicted inmates and pretrial detainees are segregated due to the likelihood of violence perpetrated upon pretrial detainees by convicted inmates.

22. In mid February, the defendants assigned convicted inmate Leon Owens to Ward 4, to a bed next to the plaintiff. This was done in deliberate disregard of the danger of assault that so doing presented to the plaintiff and other pretrial detainees housed in Ward 4.

23. At the time the defendants assigned Owens to Ward 4, beds were available in the Wards designated for use by convicted inmates.

24. At the time that the defendants assigned Owens to Ward 4, the Ward was already at its intended patient capacity.

25. From his entry into the Hospital Unit intended for pretrial detainees, convicted inmate Owens acted in a threatening and intimidating manner to the other patients in Ward 4.  Owens bragged about his gang affiliation and activities, about having spent most of his life in prison, and was violent and threatening in his speech and actions.

26. On or about February 21, 2012, while inmate Owens was apparently asleep, another pretrial detainee changed the television channel.  The pretrial detainee was helpless and bedbound, having recently suffered a near fatal heart attack and undergone open heart surgery.

27. Owens immediately leapt out of bed and raced toward the bedridden detainee.  Owens shouted loudly that he needed to give permission to change the television channel to the other patients, including the plaintiff.

28. The plaintiff told Owens that he was asleep.

29. Owens became more angry, and loomed over the detainee, threatened to kill him, and was about to physically assault him.

30. Only after an inmate worker rushed in an attempt to stop the assault did the defendant Caputo arrive.

31. After the narrowly averted attack on a helpless, severely ill pretrial detainee by a convicted prisoner, the plaintiff complained to defendant Caputo about the danger of leaving Owens in the Ward after this incident.

32. The plaintiff asked defendant Caputo why nothing more was done about the incident than giving Owens an unwritten warning.  Defendant Caputo replied that death threats were common in prison, and shrugged off the plaintiff's concern.

33. The plaintiff inquired whether defendant Caputo understood the difference between posturing between inmates in the prison yard, and the situation here, where an inmate was about to assault an hospitalized, quadruple bypass patient.  Defendant again shrugged off the plaintiff's concern.

34. Shortly thereafter, on or about February 23, 2012, Owens again became highly agitated, and began shouting at the plaintiff.  Owens became angry that the plaintiff was in possession of material that bore a symbol of the Nation of Islam, of which Owens was an open and vocal member.

35. Thereafter, Owens physically and violently attacked the plaintiff, as he had attempted to do to the detainee shortly prior.

36. Owens shouted anti Semitic remarks, stating he was "sick of the Jews", and that they had to be "stopped from taking over".

37. During his diatribe, Owens pummeled the helpless plaintiff, causing him severe physical injury.

38. At the time of the assault, the other inmates were shouting for assistance from the defendants. The door to Ward 4 was locked, and the intercom was non functioning.

39. Although assigned to the post, obliged and able to do so, defendant Serrano did not take steps to stop the assault on the plaintiff until the plaintiff had sustained severe physical injury.

40. By the time defendant Serrano finally entered the Ward, the plaintiff was bloodied and unconscious, having been beaten about the head, face and body. By the time defendant Serrano entered the ward, Owens had on his own stopped assaulting the plaintiff.

41. As a result, the plaintiff sustained a concussion, a skull fracture with superolateral displacement, proximal to the nasofrontal suture.

42. Thereafter, on numerous occasions, the plaintiff sought from the defendants adequate medical care for his injuries, and his underlying conditions, yet said medical care was deliberately withheld from him, or deliberately inadequate.

43. For example, on a trip to the hospital for care for the injuries sustained, members of the defendant DOC deliberately withheld from the plaintiff the use of a wheelchair, cane or any assistive device whatsoever. In response to the deliberate

misconduct of these CO's, the plaintiff attempted to obtain their names.  The CO's responded to the plaintiff by taunting and humiliating him.

44.  This misconduct of the defendants, and the employees of the defendant DOC was reported to defendant Warden Peter Murphy and defendant Department of Correction Commissioner Leo Arnone.  Despite actual knowledge of the constitutional violations against the plaintiff, neither defendant Murphy nor defendant Arnone took steps to remedy such behavior.

45.  On many occasions during his detention, the plaintiff complained to defendant Murphy in writing in great and lucid detail of the deprivations he suffered. Specifically, the plaintiff complained to defendants, including Murphy, that his medical needs were being ignored, that his right to practice his religion was being flagrantly disregarded, and that his personal safety was in jeopardy.  Defendants, including defendant Murphy, deliberately refused to rectify these violations.

46.  The actions of the defendants described above constituted deliberate indifference to the plaintiff's physical safety and his serious medical needs, and the intentional infliction of needless pain and suffering.

47. The actions of the defendants violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

48.  As a result of the actions of the defendants, the plaintiff has suffered loss of his constitutional rights; severe physical harm and injury, humiliation and ridicule;

economic losses, including but not limited to loss of income; loss of self esteem, peace of mind, emotional and physical well being; and has suffered severe emotional and mental distress.

**COUNT TWO**

 1.-46. Paragraphs 1-46 of Count One are hereby made Paragraphs 1-46 of Count Two.

 47. On numerous occasions throughout the course of his detention, the defendants deliberately refused to provide the plaintiff with Kosher, or when appropriate, Kosher for Passover meals.  The plaintiff made appropriate requests therefor, and offered to provide instruction, the support of clerical personnel, and guidance as to how to prepare such meals in accordance with his religious practice and beliefs.

 48. Notwithstanding, the defendants deliberately provided the plaintiff food it knew to be violative of the plaintiff's beliefs, and therefore, prohibited by his religion for him to ingest.  The defendants deliberately served the plaintiff uncooked or improperly cooked food, or food contaminated in such a manner that it could not be consumed by the plaintiff.

 49. The result of the defendants' conduct was that the plaintiff was forced to forego eating, further jeopardizing his poor health.

50. On other occasions, the defendants deliberately refused to allow the plaintiff to possess or wear religious garb, including a yarmulke and an unobtrusive undergarment. No legitimate penological reason exists to so deprive the plaintiff.

51. In the manner described above, the defendants have subjected the plaintiff to deprivation of his First Amendment right to freedom of religion.

52. As a result of the actions of the defendants, the plaintiff has suffered loss of his constitutional rights; severe physical harm and injury, humiliation and ridicule; economic losses, including but not limited to loss of income; loss of self esteem, peace of mind, emotional and physical well being; and has suffered severe emotional and mental distress.

**COUNT THREE**

1.-50. Paragraphs 1-50 of Count Two are hereby made Paragraphs 1-50 of Count Three.

51. In the manner described above, the defendants have subjected the plaintiff to violation of the Religious Freedom Restoration Act, 42 U.S.C.A. §2000bb-1.

52. As a result of the actions of the defendants, the plaintiff has suffered loss of his constitutional rights; severe physical harm and injury, humiliation and ridicule; economic losses, including but not limited to loss of income; loss of self esteem, peace of mind, emotional and physical well being; and has suffered severe emotional and mental distress.

**COUNT FOUR**

1.-46.   Paragraphs 1-46 of Count One are hereby made Paragraphs 1-46 of Count Four.

47.   In the manner described above, the defendants have subjected the plaintiff to violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111 et seq., As Amended; and the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 et seq.

48.   As a result of the actions of the defendants, the plaintiff has suffered loss of his constitutional rights; severe physical harm and injury, humiliation and ridicule; economic losses, including but not limited to loss of income; loss of self esteem, peace of mind, emotional and physical well being; and has suffered severe emotional and mental distress.

**COUNT FIVE**

1.-50.   Paragraphs 1-50 of Count Two are hereby made Paragraphs 1-50 of Count Five.

51.   The actions of the defendants were extreme and outrageous.

52.   The actions of the defendants were intentional.

53.   The actions of the defendants were likely to and did cause the plaintiff emotional distress, and that emotional distress was severe.

54.   The actions of the defendants constitute the intentional infliction of emotional distress.

55.  As a result of the actions of the defendants, the plaintiff has suffered loss of his constitutional rights; severe physical harm and injury, humiliation and ridicule; economic losses, including but not limited to loss of income; loss of self esteem, peace of mind, emotional and physical well being; and has suffered severe emotional and mental distress.

**WHEREFORE**, the plaintiff claims judgment against the defendants as follows:

A.  Compensatory damages, including but not limited to compensation for economic losses, including but not limited to physical harm, injury, emotional distress, physical illness and attorney's fees;

B.  Punitive damages;

C.  Costs of this action;

D.  Reasonable attorney's fees;

E.  Such other relief as this Court shall consider to be fair and equitable.

## CLAIM FOR JURY TRIAL

The plaintiff claims trial by jury in this case.

THE PLAINTIFF


BY      /s/ William S. Palmieri
        WILLIAM S. PALMIERI
        Federal Bar No. ct14361
        Law Offices of William S. Palmieri, L.L.C.
        129 Church Street, Suite 405
        New Haven, CT 06510
        (203) 562-3100
        (203) 909-6006 (fax)
        wpalmieri@hotmail.com
        His Attorney